UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

DUSTIN M. WILSON,                      )
                                       )
        Plaintiff,                     )
                                       )          No. 6:18-CV-54-KKC-HAI
v.                                     )
                                       )
HARVEY SHEARER &                       )          RECOMMENDED DISPOSITION
AMBER LATHAM, LPN,                     )
                                       )
        Defendants.                    )
                                       )

                    ***   ***   ***   ***

On February 20, 2018, the Clerk docketed a complaint by *pro se* Plaintiff Dustin M. Wilson, a prisoner at the Luther Luckett Correctional Complex in LaGrange, Kentucky, against Defendants Harvey Shearer and Southern Health Partners. D.E. 1. The case was transferred to this District from the Western District of Kentucky on February 22, 2018. D.E. 5. On June 29, 2018, District Judge Caldwell dismissed Defendant Southern Health Partners and dismissed Wilson's claim of inadequate medical care against Defendant Shearer. D.E. 10. She also ordered a response from Defendant Shearer on Wilson's claim of "infringement on his constitutional religious rights[.]" *Id*. at 5.

The matter was referred to the undersigned on August 3, 2018, to "conduct all further proceedings, including preparing proposed findings of fact and recommendations on any dispositive motions." D.E. 16. On November 26, 2018, Wilson filed a motion to amend his complaint (D.E. 23) and the undersigned recommended that the motion be granted in part and denied in part. D.E. 27. Judge Caldwell adopted the recommendation and the amended complaint was filed on April 10, 2019. D.E. 28; *see* D.E. 29.

After the filing of the amended complaint, Wilson has two claims.  First, Wilson alleges an infringement on his religious rights by Defendant Harvey Shearer.  Second, Wilson alleges a violation of his Eighth Amendment right to adequate medical care against both Defendants. Discovery closed on August 30, 2019, with dispositive motions to be filed by October 30, 2019, and responses due by November 29, 2019.  Each defendant filed a motion for summary judgment. *See* D.E. 46; D.E. 48.  Wilson failed to file a response.  Thus, the motions stand ripe for review.

## I.  Failure to Respond to Defendants' Motions

Where a party "fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." *Scott v. Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (unpublished table decision; *see also Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (finding that plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived).  Joint Local Rule 7.1(c) also provides that a failure to file a response in accordance with a court's scheduling order may be grounds for granting a motion for summary judgment.

Here, Wilson has filed neither a timely response to either motion nor a request for an extension of time.  *See* D.E. 44.  For this reason, the Court views the Defendants' motions as unopposed and will recommend that the motions be granted.  However, in granting a motion that will dispose of a claim, courts should make certain that a moving party has satisfied its burden under the Federal Rules.  "[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded.  The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden."

*Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).  The Court will therefore briefly address the merits of Wilson's claims.

## II.  Wilson's Religious Rights Claim

Although Defendant Shearer is entitled to summary judgment because of Wilson's failure to timely respond to his motion, the Court will briefly address Wilson's freedom of exercise claim on the merits brought pursuant to 42 U.S.C. § 1983.  Principally, Wilson asserts a Free Exercise Claim, arguing that his rights under the First Amendment were violated when he was denied permission to "have fellowship with other Christians of my faith[.]"  D.E. 1 at 4.

The First Amendment provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. Amend. I.  The protections of the First Amendment extend to state inmates, and federal courts are under an obligation to make sure such rights are protected.  *See Turner v. Safley*, 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution.").  However, "[a]n inmate's right to freely exercise his religion may be subject to reasonable restrictions while he is incarcerated."  *Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003) (order).  Importantly, "[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held."  *See Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (internal quotation marks omitted).

*Turner* provides the governing standard for Wilson's claims, and, under that case, the Court must weigh Wilson's First Amendment right to freely exercise his religion against the jail's legitimate penological interests.  The Court considers certain factors in performing that balancing test:

"First there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." If not, the regulation is unconstitutional, and the other factors do not matter. Unlike the first factor, the remaining factors are considerations that must be balanced together: (2) "whether there are alternative means of exercising the right that remain open to prison inmate"; (3) "the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives" available "that fully accommodate the prisoner's rights at de minimis cost to valid penological interests."

*Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999) (quoting *Turner*, 482 U.S. at 89-91).

Here, Wilson alleges that Defendant Shearer personally denied him the right to participate in "fellowship with Christians of [his] faith." D.E. 1 at 4. Shearer argues that the restriction on allowing inmates of the detention center access to the chapel was "reasonably related to legitimate penological interests" because from August 2016 to October 2017, the facility housed a dangerous inmate who was required to be "excluded from the rest of the population because of the Prevent Rape Enforcement Act." D.E. 48-1 at 17. Shearer offers a sworn affidavit in which he states that the chapel was "the only available secured area" in the facility to adequately house the inmate, whose initials are C.S., in accordance with the Prevent Rape Enforcement Act ("PREA"). D.E. 48-2. Shearer states that "no weekly or regularly scheduled religious services took place in the Chapel due to the safety and security of other inmates while C.S. was being housed there." *Id*.

Shearer further contends that the detention center provided "ready alternatives" in employing a full-time chaplain who was at the facility a minimum of thirty hours per week "to counsel or offer services to inmates," and that "weekly or regularly scheduled religious services resumed in the chapel" upon inmate C.S.'s transfer on October 17, 2017. *Id*.

The Court finds that Shearer presents a legitimate penological interest in maintaining inmate security by halting services in the facility's chapel. Per Shearer, and without evidence offered by Wilson otherwise, an inmate at the facility required twenty-four hour, seven days a

week seclusion from the facility's entire population "due to his propensity of sexual violence towards other inmates" and per PREA. *Id*. Additionally, the facility offered a reasonable alternative in providing a chaplain to provide counseling and other services to inmates who was available a minimum of thirty hours per week. Shearer contends that the dangerous inmate, C.S., was booked into the facility in August 2016 and was transferred out in October 2017. Wilson was booked into the facility on August 21, 2017, and transferred out on November 28, 2017. *See* D.E. 48-3 at 1-2. Therefore, Wilson's period of imprisonment at the facility was during the time C.S. was there, justifying Wilson's lack of access to the chapel during his time at the Wayne County Detention Center.

Accordingly, Wilson's claim of a violation of his First Amendment right to Free Exercise should be denied.

### III. Wilson's Inadequate Medical Care Claim

Wilson's claim of inadequate medical care is based upon "having mental conditions now and has suffered from these condition[s] even prior to incaration [sic][.]" D.E. 29. To succeed on an Eighth Amendment claim related to a prisoner's medical treatment, the prisoner must prove that the prison officials unnecessarily and wantonly inflicted pain by acting with deliberate indifference toward the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also O'Bryan v. Fed. Bureau of Prisons*, No. 6:07-CV-76-DCR, 2007 WL 2571906 at *4 (E.D. Ky. Sept. 4, 2007). To prove a deliberate indifference claim, the plaintiff must establish both an objective element (that the medical condition was sufficiently serious) and a subjective element (that prison officials knew of, but consciously disregarded, a substantial risk of harm to the plaintiff's health). *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). The subjective element has been described as "more culpable than mere negligence; it must

demonstrate deliberateness tantamount to intent to punish." *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Further, "the subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot be proved by factually unsupported, conclusory opinions[.]" *United States v. State of Mich.*, 940 F.2d 143, 154 n.7 (6th Cir. 1991); *accord Stevens v. Gooch*, 615 F. App'x 355, 360 (6th Cir. 2015).

Wilson's complaint appears to allege that Defendant Shearer failed to ensure he was receiving adequate medical care because, as Wilson claims, "on many occitions [sic] Mr. Shearer was informed by me that the medical staff wasn't doing there [sic] job correctly[.]". *Id*. Wilson also alleges that Shearer "was present during a sick call . . . and at that time [he] was made aware that my needs was [sic] not being met and was ask [sic] to get some things done." *Id*. Wilson asserts his inadequate medical care claim against Defendant Amber Latham, LPN, for denying him "mental health treatment, or refferals [sic] needed for my self [sic]." *Id*. In response, Defendant Latham has provided Wilson's medical history while at Wayne County Detention Center in Docket Entries 46-3 through 46-29.

"[T]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (quoting *Hudson v. McMillian*, 503 U.S. 1, 20 (1992). And, in cases where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. Cty. Of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

6

The record does not indicate that Wilson was severely injured by an inattention to his medical needs. Furthermore, the record makes clear that Wilson did receive medical attention. Every sick call that Wilson put in was promptly responded to and when he was seen for complaints of depression and anxiety, Defendant Latham referred him to a provider for medicine orders and a nurse practitioner prescribed him Zoloft. *See* D.E. 46-26; 46-27. Wilson did submit sick calls that were just to receive psychiatry medication, however, the record does not indicate Wilson was suffering from any symptoms of a mental condition which required a referral to a provider until November 8, 2017. *Id.*

Additionally, when Wilson was booked into the facility, he indicated to Defendant Latham that he had not and was not taking any medication prescribed to him by a physician and denied recent thoughts of committing suicide. *See* D.E. 46-3; D.E. 46-4. Wilson did, however, indicate that he had previously attempted suicide and was hospitalized for his mental health in 2008, more than eight years before his admission to the Wayne County Detention Center. *See* D.E. 46-4. Furthermore, Wilson did not present a valid prescription for any medication upon his booking into the facility, as documented by Defendant Shearer in Docket Entry 48-3 and by Defendant Latham at Docket Entry 46-3. Defendants are entitled to summary judgment on Wilson's deliberate indifference claim.

### IV.  Other Issues

Defendants both argue they are entitled to qualified immunity. *See* D.E. 46-1 at 11-13; D.E. 48-1 at 19-25.

> Qualified immunity protects state officials, including prison employees, so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In resolving qualified immunity claims, we ask whether: (1) the facts, viewed in the light most favorable to Plaintiff, show a violation of a constitutional right; and (2) the right at issue was clearly established at the time of the alleged misconduct.

*Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (internal citations and quotation marks omitted). "[Q]ualified immunity must be assessed in the context of each individual's specific conduct." *Id*. at 624. "The burden rests on Plaintiff to show Defendants are not entitled to immunity." *Id*. at 623.

In this case, the facts, even when viewed in the light most favorable to Wilson, do not show that either Defendant violated a constitutional right to adequate medical care or that Shearer violated Wilson's right to free exercise of his religion. As discussed, Wilson has failed to prove either claim. He therefore has not demonstrated a violation of a constitutional right. Qualified immunity, which shields Defendants from being sued, *Reilly*, 680 F.3d at 623, provides an alternative basis for granting summary judgment in favor of Defendants.

The Court notes that Shearer also raises the defense that Wilson has not exhausted his administrative remedies as to either claim. D.E. 48-1 at 10-14, 19. Wilson alleges in his amended complaint that he "in fact filed grievance in which were never returned – repeatly [sic] until transfer[.]" D.E. 29. However, in light of the recommendation of the undersigned that Defendants be granted summary judgment on other grounds, the Court sees no reason to delve into the issue of whether Wilson has exhausted his administrative remedies.

### V.  Conclusion

The undersigned **RECOMMENDS** that Defendants' motions for summary judgment (D.E. 46; D.E. 48) be **GRANTED**. First, Wilson failed to timely respond to the motions. Second, his claims fail on the merits because the facts do not support a finding of infringement on his freedom of religious exercise or deliberate indifference to his serious medical needs.

The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under

subsection (B) of the statute.  Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 23rd day of December, 2019.

**Signed By:**

*Hanly A. Ingram*

**United States Magistrate Judge**